IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-01110-PAB

WILLIAM A. COYLE,

      Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

      Defendant.

_____

**ORDER**
_____

This matter is before the Court on the Complaint [Docket No. 1] filed by plaintiff

William A. Coyle on May 9, 2018.  Plaintiff seeks review of the final decision of

defendant Andrew M. Saul (the "Commissioner")[1] denying his claim for disability

insurance benefits and supplemental security income under Titles II and XVI of the

Social Security Act (the "Act"), 42 U.S.C. §§ 401-34, 1381-83f.  The Court has

jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and

1383(c).[2]

_____

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of Social Security. Accordingly, Mr. Saul is substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as defendant in this lawsuit.  *See* Fed. R. Civ. P. 25(d).

[2] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

## I.  BACKGROUND

In March 2014, plaintiff filed an application for disability insurance benefits
("DIB") under Title II of the Act and for supplemental security income ("SSI") under Title
XVI of the Act.  R. at 127-28.  He initially alleged a disability onset date of July 1, 2010,
but later amended the alleged disability onset date to November 27, 2013.  R. at 129,
312.  His claims were denied on June 16, 2014.  R. at 157.  Plaintiff requested a
hearing before an administrative law judge ("ALJ"), R. at 161-62, and a hearing was
held on August 2, 2016.  R. at 50.  On January 24, 2017, the ALJ issued a decision
denying plaintiff's claim.  R. at 22.  The ALJ found that plaintiff met the insured status
requirements of the Act through December 31, 2015 and had not engaged in
substantial gainful activity since the amended onset disability date of November 28,
2013.  R. at 28.  The ALJ also determined that plaintiff has the following combination of
severe impairments: degenerative disk disease, post-traumatic stress disorder
("PTSD"), depression, major depressive disorder, and dissociative disorder.  *Id.*  The
ALJ concluded that these impairments "significantly limit[] the ability to perform basic
work activities as required by SSRs 85-28 and 96-3p," *id.*, but found that these
impairments do not meet or medically equal the severity of one of the regulations' listed
impairments.  R. at 29-30.  Ultimately, the ALJ concluded that plaintiff had the residual
functional capacity ("RFC") to perform light work as defined in §§ 20 C.F.R.
404.1567(b) and 416.967(b) with the following limitations:

> can lift 20 pounds occasionally and 10 pounds frequently; can stand
> and/or walk for 4 out of 8 hours; sit for 8 out of 8 hours; can perform
> unskilled work that takes up to three months to learn and master; could be

2

off task 10% of the work day; can frequently climb ramps and stairs can
occasionally climb ropes, ladders, or scaffolds; can frequently balance;
can occasionally crouch, stoop, kneel, and crawl; cannot tolerate more
than occasional exposure to unprotected heights, fast moving machinery,
or vibrations; can travel independently and use public transportation; and
requires the use of a cane with ambulating over 500 feet or over rough
terrain.

R. at 30.  The ALJ determined that plaintiff was unable to perform his past relevant

work as a customer service representative, R. at 39, and, based on the testimony of the

vocational expert, determined that plaintiff was "capable of making a successful

adjustment to other work that exists in significant numbers in the national economy."

R. at 40.  On December 1, 2017, the Appeals Council denied review of plaintiff's claim.

R. at 7-11.  Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II.  STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to

determining whether the Commissioner applied the correct legal standards and whether

the decision is supported by substantial evidence in the record as a whole.  *See Angel*

*v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse

an ALJ simply because the court may have reached a different result based on the

record; the question instead is whether there is substantial evidence showing that the

ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir.

1990).  "Substantial evidence is more than a mere scintilla and is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not

substantial if it is overwhelmed by other evidence in the record or constitutes mere

conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court must not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  THE FIVE-STEP PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

(1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§ 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

*Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden

of establishing a prima facie case of disability under steps one, two, and four, the

burden shifts to the Commissioner to show the claimant has the residual functional

capacity (RFC) to perform other work in the national economy in view of her age,

education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731

(10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  While the

claimant has the initial burden of proving a disability, "the ALJ has a basic duty of

inquiry, to inform himself about facts relevant to his decision and to learn the claimant's

own version of those facts."  *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV.  ANALYSIS

Plaintiff argues that the ALJ erred by (1) failing to properly evaluate the medical

evidence and source opinions and (2) failing to properly evaluate plaintiff's subjective

allegations.  Docket No. 28 at 7-14.  Plaintiff further contends that the ALJ's step-five

findings were unsupported by substantial evidence.  *Id.* at 17.  Defendant responds that

5

the ALJ's evaluation of the medical source opinions were proper because the ALJ provided valid and reasonable rationales to support her assessments and reasonably concluded that the record did not support plaintiff's subjective allegations of disabling limitations.  Docket No. 29 at 9-15.

With regard to the source opinions, plaintiff argues that the ALJ's decision does not reflect that she performed a proper analysis in determining the amount of weight to give the opinions.  "[C]ase law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct."  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  In the first step, the ALJ must consider whether the treating physician's opinion is entitled to controlling weight.  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188, *1 (July 2, 1996).[3]

If the opinion is not given controlling weight, the ALJ will proceed to the second step of the inquiry.  In the second step, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR

---

[3] In 2017, the regulations were changed to no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  20 C.F.R. § 404.1520c(a).  Because plaintiff's claim was filed before March 27, 2017, the former regulations apply.  *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to medical opinions from your treating sources.").

[§§] 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."  SSR 96-2p, 1996 WL 374188, *4.   The factors that must be applied in determining what weight to give an opinion are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)); *see also* 20 C.F.R. § 404.1527(c).  "[A]n ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight."  *Langley*, 373 F.3d at 1119 (internal quotation marks and alterations omitted).  When evaluating a treating or examining physician's opinion in relation to that of an non-treating physician, the examining or treating physician's opinion "is presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record."  *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1)).  Failure to apply this analytical framework and to provide sufficiently specific, legitimate reasons tied to the factors for the weight given to a treating physician's opinion warrants reversal.  *Watkins*, 350 F.3d

at 1300-01.

The ALJ considered eleven source opinions in making her determination that plaintiff is not disabled: three treating physicians, one treating psychologist, one primary care doctor, and two treating physician assistants[4] ("treating physicians"); two physicians who examined plaintiff once ("examining physicians"); and two physicians who did not examine plaintiff ("reviewing physicians").

### A.   Treating Physicians

Treating physician Dr. Khawaja Omair Husain opined in October 2011 that an MRI did not account for plaintiff's complaint of numbness in his legs.  R. at 38.  The ALJ gave this opinion "reasonable weight," as it was "consistent with the diagnostic evidence and [plaintiff's] exam findings and treatment history."  *Id.*  Dr. Kathleen Cowie, also a treating physician, indicated in September 2012[5] that plaintiff was limited to a less-than-sedentary range of work and would miss four or more days of work per month.  R. at 548.  She also opined that plaintiff could lift ten pounds on an occasional basis and lift fewer than ten pounds frequently.  R. at 547.  The ALJ gave this opinion "little weight" because it was "not consistent with the claimant's objective diagnostic findings" or his exam findings and was not "explained in any significant detail" or

---

[4] A physician assistant is not considered an "acceptable medical source." Rather, a physician assistant is considered an "other source."  SSR 06-03p, 2006 WL 2329939 at *2 (Aug. 6, 2006). The ALJ considered the opinions of the treating physician assistants in her decision.  R. at 36-37.

[5] The opinions of Dr. Husain and Dr. Cowie were rendered before plaintiff's alleged onset disability date of November 27, 2013.  *See* R. at 312.  In addition, the opinions of Dr. Mitchell and Dr. Lorber, discussed below, were made prior to plaintiff's alleged disability onset date.  *See id.*

"supported by objective treating notes." R. at 36. The ALJ did not explain which objective diagnostic findings she found to be inconsistent with Dr. Cowie's opinion. *See id.*

On July 22, July 24, and August 12, 2014, Dr. Andrew Hughes, plaintiff's primary care doctor, completed Med-9 forms indicating plaintiff was completely disabled for a period of six months while he underwent further evaluation. R. at 1088, 1094, 1152. On July 28, 2015, Dr. Hughes indicated that plaintiff was unable to work for twelve months. R. at 1149. The ALJ gave this opinion "little weight," as it was "not explained in any significant detail," does not "state any function-by-function limitations," and was not consistent with the record. R. at 37. The ALJ did not set out which portions of Dr. Hughes' opinions were inconsistent with which portions of the record. *See id.*

Further, on January 28, 2016, treating physician Dr. Doris Leblanc indicated that plaintiff was "significantly impaired in his ability to function due to his PTSD and aggravated by his chronic pain." R. at 1334. The ALJ gave this opinion "little weight" because it did not set out function-by-function limitations and did not provide a "narrative explanation" for how the opinion is supported by the evidence. R. at 37. Finally, Dr. Beverly Noyes,[6] plaintiff's treating psychologist, opined on July 29, 2016 that plaintiff had marked limitations in maintaining attention and concentrating for extended periods, sustaining an ordinary routine, and performing activities within a schedule. R. at 1384. She also found that plaintiff had extreme limitations in working with others without being distracted by them and moderate limitations in ability to make

---

[6] The ALJ refers to Dr. Noyes as "Dr. Nages" in her decision. R. at 38.

simple work-related decisions.  *Id.*  While the ALJ acknowledged that Dr. Noyes was a treating physician, she noted that Dr. Noyes "only recently started treating" plaintiff "within the last year or so."  R. at 38.  The ALJ concluded that Dr. Noyes' opinion was "not consistent with the claimant's mental status exam findings"[7] and was inconsistent with the record.  *Id.*  Dr. Noyes' opinion was given little weight by the ALJ.  *Id.*

The ALJ also considered the source opinions of two treating physician assistants.  PA C. Schoephoersten opined in March 2014 that plaintiff was not able to perform full time work, but that some sedentary work was likely possible.  R. at 895. The ALJ gave this opinion "little weight" due to its lack of explanation and inconsistency with the record.  R. at 37.  On June 29, 2016, PA Dick Forshay indicated that plaintiff had a qualifying disability in the form of a musculoskeletal disorder.  R. at 1267.  This opinion was given "reduced weight" because it was "not explained in any significant detail," did not "state any function-by-function limitations," and was inconsistent with the record.  R. at 36.

### B.  Examining Physicians

Two physicians – Dr. Linda Mitchell and Dr. Fredrick Leidal – saw plaintiff for one examination.  R. at 36-38.  Dr. Mitchell examined plaintiff in August 2011[8] and

---

[7] The ALJ does not specify to which "mental status examinations" she refers. The record contains numerous documents reflecting plaintiff's then-present mental health condition.  The various mental status examinations in the record demonstrated a range of findings, from general depression, a somber mood and an inability to make eye contact  R. at 857, 862, to suicide ideation, R. at 1221, to a finding that "[t]here was no evidence of affective instability."  R. at 1389.

[8] This examination occurred prior to the alleged disability onset date.  R. at 312.

concluded that plaintiff could lift or carry 20 pounds frequently and 40 pounds occasionally, but had no other notable limitations.  R. at 501.  Her opinion was given "reasonable weight" because, although the ALJ acknowledged that it was performed "many years ago," it was "consistent with the record as a whole."  R. at 36.  Dr. Leidal, a consultative psychological examiner, examined plaintiff in November 2016.  R. at 38.  Dr. Leidel opined that plaintiff had moderate limitations following complex instructions, tolerating day-to-day work stress and pressures, and interacting with co-workers and supervisors.  R. at 1393-94.  The ALJ concluded that Dr. Leidel's opinion "[did] not appear consistent with the mental status findings from that exam, which were fairly normal" and that the limitations listed were not consistent with plaintiff's mental status exam findings or his admitted activities of daily living.[9]  R. at 38.  The ALJ gave Dr. Leidel's opinion "moderate weight," which she later described as "limited weight."  *Id.*

### C.   Reviewing Physicians

Finally, the ALJ considered the opinions of two doctors who did not personally examine plaintiff.  In September 2012, Dr. Arthur Lorber, a Social Security Administration medical expert, reviewed plaintiff's medical file as of September 2012.  R. at 36.  Dr. Lorber concluded that plaintiff could stand or walk for four hours a day and could occasionally or frequently perform postural activities.  R. at 587-89.  Dr.

---

[9]The ALJ found that plaintiff's "described activities of daily living [appeared] inconsistent with his report of disabling limitations."  R. at 35.  The ALJ specifically referenced plaintiff's testimony that he walks a mile to the park twice a week, taking three breaks on the way, R. at 67, and evidence that plaintiff "spends time with his two sons, uses Facebook to socialize with others, and . . . [does] not have any problems with the crowds while shopping at Wal-Mart."  R. at 35.

Lorber also opined that plaintiff did not require a cane to ambulate.  R. at 587.[10]   The

ALJ found that Dr. Lorber's opinion was "consistent with medical evidence," but noted

that the evidence since 2012 demonstrated plaintiff's continued use of a cane, which

suggested that plaintiff was unable to do the amount of walking and standing endorsed

by Dr. Lorber.  *Id.*  Dr. Lorber's opinion was given "partial weight."[11]  *Id.*

In June 2014, Dr. James Wanstrath, a state agency psychologist, reviewed

plaintiff's medical file and concluded that he could perform work that could be mastered

in three months' time.  R. at 137.  The ALJ gave Dr. Wanstrath's opinion "reasonable

weight," as the opinion was "somewhat consistent" with plaintiff's mental exam status

findings, his activities of daily living, and his treatment history.  R. at 38.

### D.   The ALJ's Weighing of the Opinions

The ALJ did not expressly engage in the requisite two-step inquiry when

declining to give the treating source opinions controlling weight.  It appears, however,

that the ALJ implicitly declined to give the opinions of Dr. Cowie, Dr. Hughes, Dr.

Leblanc, and Dr. Noyes controlling weight because the ALJ found that they were "not

consistent with the claimant's mental status exam findings, his treatment history, or the

record as a whole."  R. at 37-38.  Reversal for failure to engage in the controlling

weight analysis is unwarranted when the court "can tell from the decision that the ALJ

---

[10] These opinions were rendered before the alleged disability onset date.  R. at
312.

[11]The Court notes that it is somewhat difficult to discern the amount of weight
given to Dr. Lorber ("partial weight") and PA Forshay ("reduced weight") in comparison
to the weight given to the other source opinions.

declined to give controlling weight to [the] opinion." *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014).

"Even if a treating opinion is not given controlling weight, it is still entitled to deference." *Krauser*, 638 F.3d at 1330.  The ALJ was required to weigh several factors in determining the weight to be accorded to the treating physicians' opinions.  20 C.F.R. § 404.1527(c); SSR 96-2p, 1996 WL 374188, *4.  The ALJ does not need to discuss each factor, *see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), but the ALJ must nevertheless consider each factor and "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins*, 350 F.3d at 1301 (internal quotation marks and brackets omitted); *Romo v. Berryhill*, No. 16-cv-02248-WJM, 2017 WL 3911071, at *5 (D. Colo. Sept. 7, 2017).

With the exception of Dr. Husain's 2011 opinion, which was rendered before plaintiff's alleged onset date of disability, each of the treating physicians' opinions was given "little weight." *See* R. at 36-38.  The Court finds that the ALJ did not give sufficient reasons for according these opinions little weight.  Although she was not required to discuss each applicable factor, it does not appear that the ALJ gave any consideration to the length of the physicians' treatment relationship with plaintiff or the frequency of examination, the type of examination or testing performed, or whether the physicians were specialists, with the exception of noting that Dr. Noyes "only recently started treating the claimant within the last year or so and the treating history does not

support frequent exams."[12]  *See* R. at 36-38.  Rather, the explanation given for affording each treating physician's opinion little weight is conclusory, with no specific references to which parts of the record are allegedly inconsistent with their opinions. Further, what little explanation is given for devaluing each opinion is almost verbatim the same explanation providing justification for each of the other treating source opinions receiving "little weight."  *See* R. at 36-38.  This indicates a lack of specific evaluation as to the individual value of each treating source opinion, and such boilerplate language is insufficient to constitute "good reasons" for the ALJ's determination of weight.  *See Dugwyler v. Colvin*, No. 15-cv-00116-CMA, 2015 WL 13215658, at *11 (D. Colo. Oct. 30, 2015) (finding that ALJ's explanation of weight using boilerplate language was "conclusory" because ALJ did not point to specific evidence or explain why examining or consultative opinions were more satisfactory than the treating source opinions or why those opinions were more consistent with the record); *see also Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (discouraging ALJ use of boilerplate language because it "fails to inform [the court] in a meaningful, reviewable way of the specific evidence the ALJ considered"); *Kepler v. Chater*, 68 F.3d 387, 392 (10th Cir. 1995) ("[F]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.").

---

[12] The Court notes that, although Dr. Noyes had been seeing plaintiff for less than a year, her weekly visits with plaintiff allowed her significantly more examination time than Drs. Mitchell, Lorber, Wanstrath, or Leidel, all of whose opinions were given more weight than Dr. Noyes'.

Beyond the lack of explanation, the supporting statements that the ALJ did offer in her decision do not convince the Court that her decision is supported by substantial evidence.  The ALJ repeatedly states that the treating physicians' opinions are "not consistent" with the record as a whole.  However, the ALJ fails to explain which portions of the opinions are inconsistent with which portions of plaintiff's medical records, which prevents the Court from determining whether the ALJ's decision is supported by substantial evidence.  *See Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between [a treating physician's] opinion and the other substantial evidence in the record, [the ALJ's] reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings.").

Further, to the extent that the ALJ discounted these opinions because they were not explained in sufficient detail, a treating physician's opinion cannot be rejected simply because it is provided on a form that does not itself have significant narrative explanation.  *See Bonilla v. Colvin*, No. 12-cv-02182-WYD, 2013 WL 5379881, at *4 (D. Colo. Sept. 26, 2013).  "[S]uch a form from a treating physician, as compared to a nontreating doctor, cannot be discounted merely because it was a check-box form."  *Id*. (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008)).  Rather, an ALJ must determine whether the check-box form is consistent with the record as a whole. *See Anderson v. Astrue*, 319 F. App'x 712, 724 (10th Cir. 2009) (unpublished) (rejecting categorical rejection of reliance on check-box forms, "particularly [where] there were other materials [in the record] that could lend support to the conclusions in

the forms"); *see also Angster v. Astrue*, 703 F. Supp. 2d 1219, 1229 (D. Colo. 2010) (finding that the ALJ's decision to reject a questionnaire was "unfounded" because other records supporting the findings in the questionnaire).

The record contains many other documents that indicate a basis for the treating physicians' opinions.  For example, Dr. Hughes' progress notes demonstrate plaintiff's consistent complaints of back pain, a diagnosis of degenerative disc disease, and a finding that plaintiff "certainly is severely impaired with his disk disease."  R. at 1088. And during plaintiff's annual physical, Dr. Hughes noted that plaintiff had "decreased flexion, decreased extension, decreased lateral motion, tenderness of paraspinous muscles."  R. at 1090.   Moreover, Dr. Noyes' treatment notes indicate that she saw plaintiff at least twelve times for psychotherapy appointments over a course of several months.  R. 1308-1339.  She wrote corresponding progress notes for each visit.  *See id.*  The ALJ does not explain why these secondary reports do not offer support for Dr. Hughes' or Dr. Noyes' findings.[13]

Plaintiff argues that the ALJ relied on stale opinions in finding that plaintiff was not disabled.  Docket No. 28 at 14.  The opinions given the most weight by the ALJ were some of the oldest opinions – Dr. Mitchell's and Dr. Husain's 2011 opinions were

---

[13] The Court agrees that Dr. Cowie's medical opinion form does not offer much by way of explanation.  The record does contain Dr. Cowie's notes from several examinations of plaintiff.  *See* R. at 511 (assessing plaintiff with back disorder NOS and chronic pain syndrome); R. at 510 (assessing herniated disc syndrome); and R. at 537-38 (discussing MRI ordered by Dr. Cowie and finding mild facet arthropathy in disc L3-L4 and mild to moderate bilateral fact arthropathy in disc L4-L5).  Plaintiff saw Dr. Cowie for at least eight months and had at least five examinations with her before she presented her opinion.  *See* R. at 526-34. The ALJ did not explain why these findings do not support Dr. Cowie's ultimate conclusion.

given reasonable weight, and Dr. Lorber's 2012 opinion was given "partial weight."  A medical opinion does not become stale merely due to the passage of time; rather, a source opinion will become stale if the claimant experiences a material change in his or her condition subsequent to the provision of the source opinion.  *Tarpley v. Colvin*, 601 F. App'x 641, 644 (10th Cir. 2015) (unpublished); *see also Price*, 2014 WL 943101, at *7 (finding that physician's opinion was "clearly stale in light of the medical records added to the case record subsequent to the examination of the record" of that physician).  An ALJ may rely on an earlier source opinion, to the exclusion of later opinions, "only . . . by concluding that the latter . . . opinions added essentially nothing new, or nothing credibly new, to the record."  *Mares v. Colvin*, No. 16-cv-01622-WJM, 2017 WL 1951111, at *4 (D. Colo. May 11, 2017).

Here, the ALJ acknowledged that Dr. Mitchell's opinion was "performed many years ago," but nevertheless gave it reasonable weight because it was consistent with the record as a whole.  R. at 36.  At the time her opinion was rendered, Dr. Mitchell observed that plaintiff's spine did not reflect any "significant degenerative changes."  R. at 499-500.  However, since that examination, MRIs have revealed "mild facet arthropathy" and "moderate bilateral facet arthropathy" at the L3-L4 and L4-L5 discs, respectively, R. at 544, congenital fusion of the C2 and C3 vertebral bodies, R. at 768, and a "shallow disc bulge" at disc L4-L5.  R. at 1043.   Plaintiff was also diagnosed with a herniated disc at the T8-T9 vertebrae and lumbar spondylosis with mild left neural foraminal stenosis at L4-L5.  R. at 1044.  Thus, the ALJ's finding that Dr. Mitchell's opinion is nonetheless "consistent with the record as a whole," R. at 36, lacks support,

17

particularly in light of the contrary evidence and source opinions.  For this reason, the Court cannot conclude that the ALJ's opinion was supported by substantial evidence. The case will be remanded.

The Court declines to address plaintiff's remaining objections to the ALJ's decision because they may be affected by the ALJ's treatment of the case on remand. *See Watkins*, 350 F.3d at 1299 ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand").  On remand, the ALJ shall consider the factors required under 20 CFR §§ 404.1527 and 416.927 to assign weight to the source opinions and, should the ALJ continue to afford little weight to the treating physicians' opinions, shall set out specific citations to the record to support her findings.

## V.  CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this order.

DATED August 6, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

18